UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

WILLIAM CARINI,                          )
    PLAINTIFF                            )
                                  )
        VS.                          )
                                  )
IDOC, CORRECTIONAL AND MEDICAL           )
STAFF, PRESENTLY AND FORMERLY OF         )      NO. 10-1300
PONTIAC CORR CTR, INDIVIDULLY AND        )
IN THIER OFFICAL CAPACITIES OF           )
(FORMER) ACTING WARDEN JOESPH MATHY,     )
(FORMER) ASSIST, WARDEN M. HARDY         )
MAJOR (L.T. FORMERLY) KEVIN DELONG       )
CORR'S OFFICER, HALEY                     )
CORR'S OFFICER, DAVID LINDSAY            )
(FORMER) MEDICAL STAFF, DR NGU           )
MEDICAL STAFF, NURSE JOYCE               )
    DEFENDANT'S                          )

COMPLAINT

JURISDICTIONAL STATEMENT

    Now comes the Plaintiff, William Carini Pro se. Respectfully upon the present Civil action authorized by 42 U.S.C. Sec 1983 et seq.

    To, redress the deprivation and violations under the color of State Law. That violated Plaintiff's right's. Right's that are afforded under Federal and State Laws. And as such secured under the Eighth and the Fourteenth Amendment's of the United States Constitution.

    As the Defendant's, were deliberately indifferent to plaintiff's secured right's. And by failure to adequately provide for plaintiff's security, personal safety from physical harm being inflicted upon his person, caused by another inmate. And plaintiff's medical needs of proper treatment for his injuries. As is further set forth in this complaint.

    This Court's Jurisdiction is invoked, pursuant to 28 U.S.C. Sec 1331, Sec. 1343(a)(3).

(1)

This Court has jurisdiction over any of plaintiff's requests for declaratory and injunctive relief, pursuant to 28 U.S.C. Sec 2201, Sec. 2202, Sec. 2283, Sec. 2284 and Rule (65) of the Federal Rules of Civil Procedure.

This Court also with supplemental jurisdiction over plaintiff's State law claims, pursuant 28 U.S.C. Sec 1367.

Where this Courts Venue is appropriate for plaintiff to file his suit in, under 28 U.S.C. Sec 1391(b)(2). Because its within the Courts District where the event's giving rise to the complaints claims occurred.

The plaintiff, William Carini, under Inmate I.D. # N-51235, was and is at all times mentioned herein an inmate of the State of Illinois. And his being in the custody of the Illinois Department of Corrections.

Where then, as now, plaintiff is currently confined in the Pontiac Corr Ctr. 700 West Lincolin St Box 99 Pontiac IL 61764.

DEFENDANT'S

IDOC, CORRECTIONAL AND MEDICAL STAFF
PRESENTLY AND FORMERLY OF PONTIAC CORR CTR

The Defendant, Joesph Mathy former Acting Warden of Pontiac cc. At pertinent times in concern to plaintiff's claims upon this complaint. Defendant, who was legally responsible for the operation of Pontiac cc. And for the welfare of all the prisons inmates.

The Defendant,  Major Kevin Delong, (Former L.T.) A corrections Major of employ at Pontiac cc. Who was a corrections L.T. at pertinent times in concern to this complaint's claims. With the defendant at the time of the incident's was the assigned South protective custody cellhouse in rank of L.T. Defendant who was legally responsible for the operation of  the south protective custody cellhouse and for the welfare of all inmates who were, as plaintiff, housed in the south protective custody cellhouse.

(2)

The Defendant, C.O. Haley, a corrections officer at Pontiac cc.
Who on the date and time of the complaints incident's, was assigned to work
at the south protective custody cellhouse on its number (7) Gallery.
Where this plaintiff was celled in cell number, 717.

Where C.O. Haley, as corrections employee assinged to work this location
was legally responsible for the control and operation of (7) Gallery.
And the welfare of all inmates housed--celled on this gallery. As well as
Correctional offcier general control, operation and security, safety to
needed responsibility throughout the cellhouse at all time within his means
while working his shift hours and assingment of that day.

The Defendant, C.O. David Lindsay, a corrections officer at Pontiac cc.
Who on the date and time of the complaints incident's, was assigned to work
at the south protective custody cellhouse on its number (5) Gallery.
As (5) Gallery is located just below (7) Gallery.  (5) And (7) gallery's
which have available lines of sight afforded eachother for corrections staff
security control and observance.

Where C.O. Lindsay, as corrections employee assigned to work (5) gallery
location was legally responsible for the control and operation of (5) gallery
as well as general control, operation and security, safety to needed events
of responsibility throughout the cellhouse at all time wthin his means to
his working shift hours and assignment of that day.

The Defendant, Dootor Dr, Nqu, A former medical staff doctor at the
Pontiac cc, Health care unit (HCU) at pertinent times in concern to cause
of incident event's of claims alleged upon this complaint.

The defendant, Nurse Joyce, A present emplyee as a medical staff nurse
at the pontiac cc (HCU) and was so of employ at pertinent times in cause
of incident event's of claims alleged upon this complaint.

                              DEFENDANT'S ARE SUED

Each defendant is sued indivdually and in his or her offical capacity.
Where at all times mentioned in this complaint each defendant acted under
the color of State Law.

## LITIGATION HISTORY

This plaintiff has no other lawsuits in State nor federal court that are pending. Nor have any complaint's, been filed dealing with the same claimed facts involved in this case and complaint as presented.

This plaintiff, has not brought any other lawsuits, 1983 action's or alike in State or Federal court while incarcerated. Nor while not being incarcerated.

## EXHAUSTION OF ADMINSTRATIVE REMEDIES

This plaintiff believes that he has used and completed available process of grievance procedure at Pontiac and within IDOC director administration inmeans to try and solve issues and relief that should be afforded.

Plaint's grievance procedure documents in concern to his cause and of claims are hereby attached as the (Exhibits--group pages, 1-6 and group pages 5-10) As related from in the following complaint claims that are now proceeding before this court within the proper statutory time limit.

## STATEMENT OF FACTS AND CLAIMS

This plaintiff--inmate, on Oct 6th 2008, was housed in cell assignment to (7) Gallery, Cell 717. Within the South Protective custody (SPCU) cell house. Where past plaintiff had been celled for some time. However on the dates of Sept 30th-08, to Oct 6th-08 this plaint's cellmate was a high risk security escape level E Green I.D. Inmate. By the name of Richard Womack, (AKA--Buzz) I.D. # N-36127.

Where it being upon information and belief of general prison knowledge that inmate womack was known to be a violent inmate and of having committed physical violence towards other inmates in the past and of his prison status records.

For the few days that plaintiff and inmate womack had both occupied cell 717 as cellmates. Inmate womack had made it very clear verbally that he did not like the plaintiff. And that womacks intent was to chage cells / cellmates ASAP, one way or another.

Where in days just prior to and throughout the earily part of Oct 6th-08. Inmate womack had spoke with Defendant's L.T. Delong, C.O. Haley **and that of** C.O. Lindsay about his, womack womack's not getting along nor feeling that comfortable that he could deal with this pak plaintiff as a cellmate. Where womack wanting to change cells / cellmates because of it. And before a serious incident occurred.

At approximately 2:00pm of OCT 6th-08, As plaintiff and Womack were locked in cell 717 together. Inmate womack had yelled down to (5) gallery C.O., Lindsay. With womack repeated his request for C.O. Lindsay to speak with L.T. Delong ASAP about moving him to another cell. And by 3pm or else that womack's intent was in direct manner to assault this pak plaintiff, sending him to the hospital and or segregation.

C.O. Lindsay claimed there was nothing he could do and claimed to have spoke with L.T. Delong on the issue, who had denied to move Womack to any other cell.

Shortly there after C.O. Lindsay while making round check down (7) gallery was requested by plaintiff to stop at his cell, 717. Wher plaintiff had voiced his concerns of his safety being celled / cellmates with Womack any longer, Period. Plaintiff then asked C.O. Lindsay to please double check with L.T. Delong and express my concerns and fears about staying cellmates with womack. And ask again about getting inmate womack moved to another cell ASAP. As I had concern that womack would carry out his threats to harm plaintiff if womack was not moved by 3pm shift change that day. Plaintiff at about 2:15 Oct 6th-08 saw (7) gallery C.O. Haley as he was doing rounds check. C.O. Haley was stoped at cell 717 by inmate womack. With woamck again stated to C.O. Haley his demands and threats of intent to harm this plaintiff if womack wasnt moved to another cell by 3pm that day.

(5)

C.O. Haley stated he would inform L.T. Delong about the cell change request, with the security concerns  to woamcks threats and that C.O. Haley would get back up with womack before (he) C.O. Haley finished out his shift at 3pm that day.

However, C.O. Haley never returned to the gallery at any time after that. There after at about 3:15pm inmate womack proceeded to attack this plaintiff by dragging him off his bed, putting plaintiff in a headlock and then had xxx violently rammed plaintiff head into the cell's steal bars. Which had caused significant head injuries being sustained by this plaintiff.

Injuries which included (2) long deep gash's atop plaintiff's head. And of a large almost triangle like chunk  piece of scalp just being gone from plaintiff's head.  Where the wounds were so severe, needing treatment to close the wounds at an out side local hospital, St James medical center. Injuries that required plaintiff receiving (14) metal staples and (4) of regular sutures.

With this assault, violent attack by womack upon plaintiff had occurred while plaintiff was already housed x in allegedly secure "Protective Custody Status"  And where plaintiff's being assaulted by inmate womack was 100% preventable by security staff, defendant's  as claimed above and in foregoing. Where Defendant's, Delong, Haley and lindsay had all been prior well informed being put on notice in adxxnce by inmate womack himself, of his cell move demands and threats to assault this plaintiff if womack wasnt provided a cell change by 3pm, Oct 6th08.

As such the above 93) named corrections staff (defendant's)  with thier deliberate indifference had failed to protect this plaintiff from such as it was, 100% preventable harm coming to plaintiff's person and therein had allowed plaintiff's rights to be violated., cause to be violated.

Plaintiff had pursued timely prison and administrative grievance procedures concerning staff conduct. Failure to protect from cellmate assault. All to no avail or any meaningful or proper relief afforded. (See Ex. Group pages, 1-6)

In concern to plaintiff violent assault and sustained injuries committed
by inmate womack., The Pontiac cc office of Internal Affairs had conducted
an investigation. under # 2009 Pon 5022. Conducted by case invesitigator
Jeff Gabor Badge # 15008.
Where the investigation case summary report showed, that inmate womack
committed violent inmate assault--aggravated battery on the plaintiff.
While they both were cellmates , celled 717, Oct 6th-08.
Womacks actions were a violation of department rules and womack was issued
an inmate disciplinary report for the violent assauly of plaintiff.
And found guilty of that violation, receing institutional level penalties.

On Nov 3rd-08, plaintiff with concern to his injuries, overall health
care and need of proper treatment to his remaing wounds.  Plaintiff was then
forced to file, to then acting warden Mathy, an inmate emergency grievance.
Emerhency grievance issues that warden Mathy had deixedx denied. (See EX.--
group pages, 7-10)
But to emergency procedures requested, concerning improper medical staff
conduct and treatment. Grievance had requested emergency medical evalation
to asscertaining status of plaintiff's injuries--healing--infection?    and
the removal of (5) additional sutures. That were used to reclose plaintiff's
head injuries from defendant's, Pontiac medical staff. Doctor Ngu, and nurse
Joyce.  Defendant's conscious disregard of providing plaintiff adequate x
safety in medical care and treatment. From deliberate indifference of the
defendant's own bad acts, that in them self had caused plaintiff additional
and further lasting harm to, of his head injuries.
Noting that on date of plaintiff's sustained assault injuries.
He was first then properly care for at an outside hospital of St James med-
center.  Where plaintiff receive injurey treatment of (14) metal Staples
and (4) regular sutures.
From plaintiff's own prior life experiences of hospital care, receiving
various types of stitches to close various wounds. And taking note of the
seriousness of his own wounds, plaintiff can state without a doubt that the
St James attending doctor did an amzing good job to close--up--over, the
hole--left of wounds from plaintiff's assault.
Unfortunately less than (8) days later, Oct 14th-08, plaintiff was called
to Pontiac's HCU.

Where without having been pre-evaluated by any doctor to asscertain if the injuries--staples, etc that had been received from St james were medically sound, within healing process. Enough so, if it was or not at all safe in healing process to remove suture etc.

With it being such short time frame of healing, less then (8). With concern to seriousness of injuries. However, Defendant, Nurse Joyce, without doctor approval nor proper asscertaining her self or pre-pairing the injured site, sutured area it self.

Defendant Joyce just wantonly proceeded to hopefully butcher--up this plaintiff's head--scalp, injuries--of the sutures afixed, by attempting to remove sutures while still blood and scab covered over.

Where at (3) different times plaintiff had to pull away and request that she stop. Do to the pain nurse joyce was causing plaintiff.

It was only after defendant joyce failed to be able to remove all the sutures, having left 3-4 sutures unremoved.  But had also re-injured-- and reopened plaintiff's wounds.

Where ultimately, defendant Dr Ngu, was called to remove remaining sutures and in process had continued to re-injure and widen open, the already re-opend wounds to plaintiff's head.

In sum, because of these medical staff' defendant's, wanton acts and omissions knowingly failed in thier duty to provide adequate medical care and safe processconditions thereof to this plaintiff's serious medical needs.  Causing the re-opening / re-injuring of plaintiff's wounds. Which then required that (5) new stitches be put in place to reclose the injuries.  Which had only needlessly extended the overall healing process for this plaintiff.

Where plaintiff was then called to HCU on Oct 30th-08. For evaluation of (5) sutures removal.  Plaintiff forced to be seen again by same two medical staff, Defendant's, Dr Ngu and nurse joyce. With plaintiff's concern to defendant's actions that had caused the need for the (5) additional sutures. Plaintiff had requested that any other medical staff presnt, to please conduct the (5) sutures removal.

Plaintiff's request was denied, Where defendant's aginf tryed to force plaintiff to have remaining sutures removed by defendant's, or not at all!

When plaintiff then tryed to discuss a legal / liability issue to
concern here. Defendants then refused to treat plaintiff period  and went
to falsely claim that plaintiff had refused to have the remaining sutures
removed.

To that point plaintiff was forced to leave the HCU, without his having
received proper medical care-treatment of sutures removal.

Defendant, Assist, Warden M. Hardy, was noted to plaintiff's attention
on plaintiff's escort back to his cellhouse. And had moment to try and
speak with defendant, hardy. On the matter of plaintiff's being denied me
medical care of the removal of (5) remaining stitches.

With the medical issue being one that was so obvious to Defendant Hardy,
that even as a lay person, could x  easily recognize the necessity for a
doctor's attention to plaintiff's head. As there was (5) stitches sticking
up uot of the top of the plaintiff's head, like (5) antennae.

And when plaintiff showed his top of his head most directly to warden
Hardy's sights, Warden Hardy had expressed no concern having refused to
concern himself with the medical issue mf or of plaintiff's rights, health
risk's to sustaining an infection if stitches were not removed in timely
manner. As they needed to be removed at that point of time.

Where defendant Hardy was asked by plaintiff what he was to do to receve
proper medical care, stitches removed. Defendant Hardy rolled his eyes,
shrugged in reply of I dont know nor do i care, its your problem now.
And defendant Hardy then proceeded to walk off from any further discussing
the matter with plaintiff period.

It was finally, and only then through plaintiff's letter's of medical
complaint directed to IDOC Deputy Director at that Time, of Mrs Fews of
IDOC Programs and support services and her reply thereof (attached group
page 10 of 10) then and only then plaintiff was able to obtain , ensure
that the (5) remaining stitches were removed and by medical staff other k
then defendant's, Dr Ngu and nurse joyce.

It was during the process of Internal Affairs investigation, that this
plaintiff had repeatedly suggested and firmly requested of investigator
Gabor, at 2x(2) (2) known occurrence witnesses to be interviewed.

(9)

Occurrence witnesses that would support the facts as claimed, that
the corrections employees, defendant's Delong, Haley and Lindsay, were in
fact timely put on advance notice by inmate womack himself of his repeated
requests, demands for a cell / cellmate change being moved out from cell 717
and of womack's intentions and threats of physical harm to assault this
plaintiff by sending him to either the hospital or seg unit.
Cause if womack wasnt moved to another cell by 3pm, Oct 6th-08, Womack had
threaten it would be on, the assault would go down, where womack would beat
the plaintiff's ass.

However, for reasons that were / are unclear to this plaintiff the I.A.
investigator Gabor, would not interview the plaintiff's occurrence witnesses.

But the plaintiff support's his claim of occurrence witness, with a
exhibit document of occurrence witness statement letter. (See Ex. # 11)
To occurrence witnesses of the corrections staff, defendant's Delong, Haley
and lindsay, all had been put on proper advance notice to womack's demands
, threats of intent to harm this plaintiff by assaulting him  And such
corrections staff, defendant's had knowingly allowed plaintiff to be attacked
, assaulted by womack.

Where its upon plaintiff's information and belief that the statements of
occurrence witness, inmate Ed Buie, letters contents are true and that 𝕏𝕏
occurrence witness an inmate, is still incarcerated at pontiac cc.
And he would be willing to afirm his letter's statements and further of what
he is an occurrence witness to of the event's and incidents as noted in
this pleading. Under oath at trial.

IN CONCLUSION

Plaintiff realleges and incorporates by all the foregoing, that he
has been and will continue to be irreparably injured from the resulting
permanent physical deformitie suffered. with bodly pain endured and the
lasting affects of psychological mental anguish to the incident of his being
assaulted by another inmate / cellmate.

Due to the malicious conduct of the defendant's, as described herein
and within document's attached. Sowing of defendant's deliberate indifference.
By willful and wanton acts and omissions.  Acts and otherwise that had
allowed the defendants to consciously disregard that this plaintiff faced
substantial risk of serious harm. And defendant's failing to take such
reasonable measures to abate it.   (10)

And to plaintiff's serious medical concerns and needs, that had been a result from his sustained injuries during his being assaulted.  And to extended injuries and harm cause by medcial staff to plaintiff's already sustained injuries as alleged herein.

Defendant(s) acts, which had all violated plaintiff's rights and had constituted in violations of cruel and unusual punishment inflicted. And plaintiff's denial of due process and equal protecttion of the laws under the Eighth and fourteenth amendments of the Unit states constitution and its laws, federal and State.

### PRAYER FOR RELIEF

Wherefore, plaintiff respectfully prays that this court enter a judgement granting plaintiff:

A declaration, that defendant's conduct, acts described herein violated plaintiff's rights as afore stated.

Grant plaintiff the just compensatory and punitive damages  that are warranted in this cause. In amounts to be determined by either plaintiff's amendment, jury and or court assesment. against each defendant jointly and severally.

Grant plaintiff his demand for a jury trial on all issues--claims that are triable by jury.

Grant plaintiff  his costs in this suit of action.

And for the court to grant any additional relief it deems just, proper and equitable.

Respectfully submitted,  *William Carini*  9-29-10
William Carini, Plaintiff, Pro se
I.D. # N-51235
Pontiac Corr ctr Box 99
Pontiac Il 61764.

(11)

```
                        )
STATE OF ILLINOIS       )  SS          AFFIDAVIT
COUNTY OF LIVINGSTON )
```

I, William Carini being duly sworn on oath, deposes and says.
That as to the matters in the attached cause's of action's, he is the
plaintiff. Has read the foregoing documents by him signed and states the
contents thereof are true in substance and fact to the best of his knowledge
and belief.   And as to any such matters stated to be on information and
belief, I certify that I believe same to be true.

Under penalties, pursuant to 28 U.S.C. Sec 1746 and or, of
735ILCS5/1-109.

Date, Sept 29th 2010                 /s/ William Carini
                                         Plaintiff pro se


                                     /s/ William Carini
                                         Affiant,
                                         William Carini I.D. # N-51235
                                         Pontiac Corr Ctr Po Box 99
                                         Pontiac IL 61764.

                              (1)

exhibit(s) group pages
( 1—6 )

ILLINOIS DEPARTMENT OF CORRECTIONS
COMMITTED PERSON'S GRIEVANCE

049004

| Date: 11/17/08 | Committed Person: (Please Print) WILLIAM CARINI | | ID#: N51235 |

| Present Facility: PONTIAC CC | Facility where grievance issue occurred: PONTIAC CC |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [X] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Disciplinary Report: ___N/A___ / ___N/A___
  Date of Report     Facility where issued

- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator

- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [X] Other (specify): Assulted by a former cellmate, injuries were sustained, staff knowingly failed to prevent / protect offender

- [ ] Disability

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

N36127

Brief Summary of Grievance: On tuesday Sept 30th 08, Level E Inmate richard WWW Womack # ? Had transferred back to pontiac where Womack was assigned cell 717, SPC. Cell 717 was already occupied by this inmate, William Carini N51235. In the few days that followed to the afternoon of Oct 6th 08W When I (carini) endured an assult, and sistaining severe head injuries. (Medical issues related to prior grievance filed) from inmate Womack's attack upon me. That required outside hospital treatment. Inmate womack in those few days being celled in 717, had spoken and requested of LT belong numerous times for womack to be able to change cells. that he, womack didn't feel comfortable nor feel he could deal with being carini's cellmate. And womack asked to become cellmates with some XXXXXXXX other inmate (?) who had infact agreed to become womack's cellmate. Where they knew one another, were friendly and had prior celled together, here in P.C. before.                                                    (See page 2)

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_William Carini_                     N51235          11/17/08
Committed Person's Signature              ID#            Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**

| Date Received: 2/16/08 | [ ] Send directly to Grievance Officer | [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: I'm not exactly sure what exactly you want The Internal Affair and warden Can review the investgation again to determine if the employees acted covertly in the issue for your about a sprofing [illegible]

___M, 11/08___               ___VM___          ___2/16/08___
Print Counselor's Name          Counselor's Signature     Date of Response

**EMERGENCY REVIEW**

Date Received: ___/___/___

Pontiac Corr. Ctr.
Grievance Off.

Is this determined to be of an emergency nature?
- [ ] Yes: expedite emergency grievance
- [ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____          ___/___/___
Chief Administrative Officer's Signature      Date

O 4 9 0 0 X

ILLINOIS DEPARTMENT OF CORRECTIONS
ITTED PERSON'S GRIEVANCE

For what ever real reasons LT Delong did not afford womack that specific or
any other cell move request at that time, is not aware of. However during
those few days from 9/30/08 to + including 10/6/08, this inmate did witness
numerous other inmates cell move requests be granted by LT Delong. Granted on
a less meaningful nature of urgency in a inmate cell move being afforded.
And yet there were still other open bunks and cells that Womack could have
been timely moved and afforded too. If under a wiser cellhouse authoritative
timely decision being made. This matter, the events of Oct 6th 08 and my having
to endure Womack's assult, relate and concern to an Internal Affairs conducted
investigation, by I.A. MR Gabor. Who had verbally informed this inmate on Nov
7th 08, that the investigation had been concluded, now closed and file (#7)
was sent to local States Attorney for review of charges being filed on Womack.
Although this inmate had prior suggested at least (2) occurrence witnesses
be interviewed by I.A. Gabor, Witnesses that do support grievance claims.
That upwards of (3) cellhouse C.O. Staff, were more then timely put on grave
notice, Oct 6th 08, by inmate Womack himself!! of his intentions to in fact
assult this offender, carini. If he, Womack was not moved out of the cell 717
and away from inmate carini, by 3pm that afternoon of Oct 6th 08. I.A. Gabor's
statements to this inmate claimed that he did not interview the suggested
inmate occurrence witnesses, because he, had all he needed for the investigatio
needs. (what ever that truly means ?) and had closed the file investigation.


More specifically issues of grievance, Where on the early morning hours of
Oct 6th 08, Inmate Womack proceeding in yard movement line, had alleged to
LT Delong and other staff at front desk, that he needed a cell move that day!
That he didnt care what cell he was moved to (IH There were cells open) just
to move him out of cell 717X and away from inmate carini. Womack further allege
that if he wasn't moved from that M cell by 3pm that day, one or both of the
inmates X in that cell 717, were going to seg, or the hospital. Cause it would
be on! He Womack would get down to taking care of what needed to be done with
carini, period, by beatting carini's ass. During the remaining morning and
early afternoon hours. Womack was heard to make these same claims to all the
staff that he came into contact with. And had even sent word, of his real
intentions to LT Delong, through the cellhouse and gallery workers.
More specifically between 11am--2pm on Oct 6th, seeing that 7 gallery 's
assigned C.O. Haley, wasnt much to be found on the gallery that day. Womack
kept yelling down to 5 gallery C.O. Lindsy. Informing C.O. Lindsy of his,
womack's demands and intentions come 3pm that day. BX And that C.O. Lindsy
better get up with and remind LT Delong to move womack before 3pm.
Womack did not M just yell down to C.O. LIndsy once, but at least (3) times
stating his intentions.                    (see page 3)

(2 of 4)

049004

With C.O. Lindsy's response's that he would see what he could do once he got chance to talk with LT Delong, after making the cell moves on his own gallery that he had to do. And chase down to lock up a few inmates he let out to take shower even though it was not a shower day, nor did those inmates have jobs to afford a shower at that time. doing those favors already asked of C.O. Lindsy, but this favor or womack, was the last he was doing for anybody the rest of that day.

It is unknown to this inmate if C.O. Lindsy even realy did infact go to speak with LT Delong of the concern to the threats and intentions of womack and as such the safety concerns to this inmate and security concerns overall of facility. But at one point C.O. Lindsy had yelled up to inmate womack to tell him that LT Delong had allegedly said no go on that move today. Even though another cell and inmate had already told C.O. Lindsy and LT Delong, that he XX agreed to have womack move in the cell with him.

Additionall at a later point C.O. Lindsy, really came down only to lock up the inmates and cells that were prior I knowingly left open by C.O. Haley, when he walked off the gallery. As C.O. Lindsy passed cell 717, seeing that I prior had a good manner with officer Lindsy, I even stoped him to ask for him to please do me a favor and check, double check with LT Delong about his getting womack moved ASAP that day and surely before shift change. Which officer Lindsy had agreed to try. At that point womack repeated and reafrimed his demands and his intentions to officer Lindsy. However, officer Lindsy did not return nor send any kind of informed word back.

At 2:15pm Oct 6th 08, for the first time in some 2 hours officer Haley, returned walked down 7 gallery. Just to check all doors locked before again wlaking off to wait shift change. As officer Haley came up to cell 717, he was stoped by womack. who again in a much more firm and angered manner restated his demands and intentions of what was to come at 3pm. if womack wasn't moved from the cell. Officer Haley had said that he would check with LT Delong before he finished out his shift and he would get back with inmate womack ASAP, However, officer Haley never came back to gallery nor LT Delong or any other 1st shift staff to investigate matters.

Shortly after 3pm on the 6th, inmate womack kept his word and intentions and repeatedly assulted this inmate causing him to sustain severe head injuries from having his head rammed into the cell bars. Injuries which included (2) long deep gash's atop my head and a large triangle chunk size piece of my scalp dug out and just gone out of my head. With treatment of the wounds being done at St James med center. Treatment to close injuries that required receiving (14) metal staples and (4) regular sutures.

This type of event, cellmate upon cellmate assult is, or should be more of a general pop problem, then a P.C. problem, experience to have to endure. Although this inmate has had to experience such assults under both conditions, general pop and P.C.

However, its not an experience one should just lay down and endure. Letting it pass as being part of prison life and the price one must pay for doing time under any conditions. Surely not at this point in time while in protective custody. or should the DOC system in general be allowed to brush the matter under the rug at any time per se, surely not, just cause this facility, pontiac is getting ready to close.

Where womack's attack upon me could have been and was 100% preventable from having to happen to me, period. As such that by well informed cellhouse staff that the assult was going to prceed at a set point and time or otherwise. And the cellhouse staff, from LT Delong on down the chain had notice, and did not do one thing, nothing about it to either investigate or prevent it X from it occurring.

DEC 29 2008

(3)      Pontiac Corr. Ctr.
Grievance Off.

As such the staff were put on grave notice by womack himself, of his stated intentions to harm this inmate or else. Where staff just didn't fail to protect his inmate from harm, assult, sustaining injuries, the staff as noted above, otherwise had willfully and knowingly allowed the assult to occur upon my person. Moreover its this inmates claim that LT Delong, from a (his) mind set of willful intentional acts had set up and approved the set of events and chance for womack's assult to be done upon this inmate. By womack's cell placement, by not changing womack's cell placement. By LT Delong's alleged statements that it was okay for womack to beat this inmates ass etc (see relief requested under LT Delong that follows).

Prior to submission to the grievance officer of this inmates grievance. The offender beforehand in a prior attempt to possibly resolving the grievance issues had to determine what his just options were to proceed and that could be rightfully afforded him in the resolution of the grievance issues and relief requested. his inmate on Nov 5th 08, sought and verbally inquired of his counselor, McNabb. Counselor's advise was requested to the matters herein of concern and of what this offender desired to present upon a grievance for official review.

Counselor McNabb's verbal response to this inmates inquiries was in sum, and to be inferred, that he couldn't do much in concern to per se cellhouse issues dealing with improper conduct of staff. Nor offender's personal safety and security issues within cellhouse as it related to womack's assult upon me. Nor offender's cell placement / assignment status nor offenders cellmate assignment status. That these issues are concerned, addressed in the department rules / administrative directives. That I should refer to those to see if there was any resolution to the issues of grievance I had. Offender having prior received counselor's reply there more grievance is submitted directly to facility's grievance officer for his needed review.

All reasonable grievance information thats currently available and the relief desired is presented at this time. However, offender may request leave to amend his information or its relief requested specific to the issues of this grievance and or incorporate that amentment of information and relief desired within any additional and related issues of grievance that may still be submitted of record or review. As further information and or needed documentation thereof to concern may additionally become available.

Wherefore, any and all of the following points of relief are requested:

relief requested to concern SPC cellhouse assigned security staff, LT K. Delong.

For reasons already outlined in this grievance and that follow, LT Delong's employment as a correctional staff person, should be terminated!

Alternatively, LT Delong should be demoted one or more security staff grades. With his improper conduct being officially reprimanded in writing, placed in his employment file. And required to attend additional academy retraining seminars.

Where its been observed and known to this inmate that to one or more Level E, inmates upon their per security 90 day cell changes, moves, that LT Delong does allow these Level E inmates themself to pick which cell they want to move into next. Which seems to go against security procedures as what they are set up for on its security concerns to Level E inmate cell moves on the 90 day mark.

Additionally LT Delong is also overtly to inmate friendly to certain group, group click of inmate workers and with some known, formerly known alleged gang fractions. Accommodating most all of these inmates requests and concerns, cell moves or just about anything otherwise. Moreso then other inmates if other inmates areXXXX accomodated justly at all. That LT Delong, XXXXXXX allegedly told inmate womack and just prior to womack's assulting me, that LT Delong okayed womack to go ahead and beat this inmates ass. Put him in his place. Where LT Delong would make sure that womack didn't go to seg for it.

(4)

(3 of 6)

049004

And that LT Delong alleged to womack that it was also okay to beat inmate carini's ass cause he was a trouble maker of some kind. XXXXXXX (this inmate has no understanding why LT Delong would falsely make such claims upon this inmate)

Relief requested to concern C.O. Haley, Badge # 3006

For reasons already outlined in this grievance and that follow:

Officer Haley's employment as a correctional officer should be terminated. Where its been observed by this offender not only on oct 6th 08, but on additional dates where officer haley worked 7 gallery. That Officer Haley does not just fail to follow proper security procedures in just about any inmate movement in general. But doesn't concern himself in his disregarding such security procedures. Further that officer Haley is also overtly to inmate friendly. Being more then open to allowing upon any inmates request, including level E's, to open their cell doors for various improper reasons. Allowing inmates access to gallery, other cells and inmates for what ever reasons that inmate deems fit. That officer Haley would / and does just walk off the gallery for extreme periods of time. Leaving the gallery XX unattended or secure at the same times that he has given inmates unwarranted access out of their cells and to "Run" the gallery.

Staff improper conduct which puts at risk the security and control of the facility as a whole. Moreover the protective custody of to the real potential for the lack of safety and concern of harm being caused to inmates by other inmates.

Relief requested to concern C.O. Lindsy Badge # 5442

for reasons X outlined in grievance officer Lindsy's conduct is requested to be officially reprimanded in writing and placed in his employment file. Further that officer XX Lindsy should be required to attend, repeat an additinoal full cadet academy training cycle. To reafirm, learn, the full responsibilities and duties and all the proper security procedures a correctional officer is infact required to known, to follow, adhere to at all times.

Finally, relief requested to concern this offender's needed personal safety and to calming his real fears, concerns to his physical and mental vulnerabilities from additional harm, assults being committed upon his person within a cell, being caused by another cellmate. Moreover to peace of mind otherwise sanity being maintained for this offender being able to avoid any further incidents to occur to his vulnerable person. Of being attacked again any further scars of such injuries by the various other inmates that are repeatedly placed in a cell with this inmate. Of which have openly stated or otherwise do not want to be cellmate with this inmate.

Where its requested that this offender be designated as a per se vulnerable inmate. As this recent assult and those prior ones have shown him to be. And that this inmate should be permanently classified as placement on a one man single cell tatus.

Where otherwise it is well known throughtout the cellhouse staff and inmates, that this offender can't keep a cellmate for various reasons. And where its due to his extremely XX antisocial personality, among other reasons of medical concerns and of offender's personal nature in his ways of conducting himself, his life, that other inmates, cellmates disagree with, find to odd to deal with or want to live in cell with.

DEC 29 2008

(5) Pontiac Corr. Ctr.
Grievance Off.

Respectfully Submitted

William Carini

# N51235

Pontiac CC Box 99

Pontiac IL 61764

cc/ EWC

ILDOC Office of inmate issues
ILDOC Chief records officer, inmate records
ILDOC Investigations unit

(6)

(4 of 6)

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

### Grievance Officer's Report

**Date Received:** December 29, 2008    **Date of Review:** April 8, 2009    **Grievance #** (optional): 049004

**Committed Person:** William Carini    **ID#:** N51235

**Nature of Grievance:** Staff Conduct

**Facts Reviewed:** Offender Carini N51235 is grieving the failure of staff to provide him protection from another offender Womack, a former cellmate, that he alleges notified several staff members several times to either get him moved or have Carini moved of someone was going to get hurt. States C/O Halley was the gallery officer on 106/08 and was notified by Womack when yard was being run that one or the other had to be moved by the end of the shift or offender Carini was going to "get his ass beat" States Womack contacted several staff members with the same message and nothing got done. States he (Womack) spoke to C/O Lindsay about moving who was going to speak to Lt Delong. Stated he is not sure if the message got to Lt Delong. Stated (Carini) spoke to C/O Halley later and was advised it would be checked out with Lt Delong. Stated Halley never returned. Stated C/O Lindsay had advised them both of "no go" on the moves. Alleges Lt Delong had remarked for offender Womack to go ahead and assault offender Carini and no seg time would come of it. States after shift change offender Womack assaulted C/O Carini resulting in injuries, a 2 inch gash on his head, triangular chunk of scalp missing and trip to outside hospital for 12 stitches to address the wounds. Lt Delong to return to Academy for additional training time, written up and not be so inamte friendly. Wishes officer Halley be fired for neglecting his duties as an officer not only on this day in question but for overall performance. Alleges not touring gallery as required. Wishes C/O Lindsay be written up, return to Academy for additional training and learn responsibilities all over. Offender Carini wishes vulnerable and one man cell designations. Counselor write he is not sure what the offender wants, though grievance officer found it clearly listed in relief requested and was legible as the grievance was typed, and recommends sending to grievance officer so investigative reports can be reviewed. Grievance officer reviewed movment of offender Carini by OTS and notes offender Carini was out of the institution on 10/6/08 on a medical furlough from 16:49 till 18:51. Grievance officer contacted Internal Affairs and was advised the investigation was completed and no charges were filed by the States Attorney against Womack. Correspondence received reflected no staff negligence substantiated to affirm offender Carini's claims of staff indifference. Lt DeLong was contacted and related offender Carini or Womack never spoke to him regarding the cell move, no officer's came to him regarding any issues between the two offenders and claims he addresses all issues presented to him in the cellhouse to the best of his ability with the information presented. Remembers the incident and that Carini never spoke to him prior to or after the incident. Grievance officer contacted C/O Halley who stated he does not recall the incident but stated if there was a reported problem he would have passed the information on to the Lt of the cellhouse.

**Recommendation:** Based on research cited above by grievance officer after contacting and interviewing staff involved and correspondence from Internal affairs that the issue was investigated and that no indifference or staff misconduct could be substantiated grievance officer recommends grievance be denied

Wesley Wiles _____    _Wesley M Wiles_
    Print Grievance Officer's Name    Grievance Officer's Signature
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

### Chief Administrative Officer's Response

**Date Received:** 4/16/09    ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments:**

_____    4/16/09
Chief Administrative Officer's Signature    Date

### Committed Person's Appeal To The Director

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_William Carini_ William Carini    N51235    April 27th 2009
    Committed Person's Signature    ID#    Date

(5 of 6)

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE** (Continued)

Grievance officer contacted C/O Lindsey who stated he did not have the gallery on the day in question, stated offender Womack wished to be moved but was aware that it would not be possible due to escape-risk designations of the parties involved and that the issue should be handled by the assigned gallery officer.

( 6 of 6 )



**Illinois**
Department of
**Corrections**

**PAT QUINN**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

May 19, 2009

William Carini
Register No. N51235
Pontiac Correctional Center

Dear Mr. Carini:

This is in response to your grievance received on May 1, 2009, regarding medical (treatment-Offender Womack-inflicted head injuries on Offender Carini-10/6/08) and staff conduct (Lt. Delong-failure to protect-10/6/08) which was alleged to have occurred at Pontiac Correctional Center. This office has determined the issue will be addressed without a formal hearing.

In the grievance you allege that you reported to staff that Offender Womack was "going to beat your ass". On 10/6/08, you endured an assault and sustained severe head injuries. You were treated at St. James Hospital. Follow-up was at PON HCU on 10/14/8, the staples "were not holding well". The staples were removed...by Dr. Ngu. Dr. Ngu then approximated the wound and placed sutures. The patient was brought to HCU on 10/30/08 for suture removal. There was "an excellent healing of the scalp".

The incident was investigated by Pontiac Internal Affairs, case # 2009PON5022.

The Grievance Officer's report (**049004**) and subsequent recommendation dated April 8, 2009 and approval by the Chief Administrative Officer on April 16, 2009 have been reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Jackie Miller
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:   Warden Mathy, Pontiac Correctional Center
William Carini, Register No. N51235

Exhibit four
pages (7-10)

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**

| Date: 11/3/08 | Committed Person: (Please Print) WILLIAM CARINI | ID#: N51235 |
|---|---|---|

| Present Facility: Pontiac SPC--717 | Facility where grievance issue occurred: Pontiac CC |
|---|---|

**NATURE OF GRIEVANCE:**

☐ Personal Property ☐ Mail Handling ☐ Restoration of Good Time ☐ Disability
☒ Staff Conduct Medical ☐ Dietary ☒ Medical Treatment ☒ Other (specify): Emergency
☐ Transfer Denial by Facility ☐ Transfer Denial by Transfer Coordinator Procedures requested

☐ Disciplinary Report: ___/___/___ N/A     N/A
                        Date of Report      Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

Brief Summary of Grievance: The Circumstances of how this offender first sustained severe head injuries from an assault endured from another inmate on Oct 6th 2008. Although at present relates, but such circumstances of the assault etc will be more fully grieved forth coming. And where last informed on Oct 21st -08 by I.A. Investigator Gabor, that specific matter was still under investigation. And I have not to date heard otherwise.   So the medical treatment issues concerned to the injuries are what is addressed upon this grievance and relief requested.   Where on Oct 6th 2008, after 3pm count, I endured an assult and sustained severe head injuries. Thereafter I was taken to the health care unit. Where ultimately determined by Dr Mahone, HCU's Director, that do to the severe injuries sustained included (2) long deep gash's atop my head.   SEE PAGE (2)

Relief Requested: Moreover following, but in sum, Emergency nature being medically evalated, ASAP, Asscertaining status of "STITCHES", Healing ? Infection? With the timely, needed removal of the present (5) Sutures in my head.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.
i.e. Risk potential serious infection ? Otherwise complications needing additional medical treatment to come.   N51235  11 3 08
                    Committed Person's Signature Wm Carini    ID#    Date
(Continue on reverse side if necessary)

---

| Counselor's Response (if applicable) | |
|---|---|

Date Received: ___/___/___   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

Print Counselor's Name          Counselor's Signature          Date of Response ___/___/___

---

| EMERGENCY REVIEW | |
|---|---|

Date Received: 11 5 08   Is this determined to be of an emergency nature?
☐ Yes: expedite emergency grievance
☒ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

Chief Administrative Officer's Signature          Date 12 9 08

ILLINOIS DEPARTMENT OF CORRECTIONS
MITTED PERSON'S GRIEVANCE

And a large triangle size chunk piece of my scalp being gone out of my head. The chunk size piece of scalp which I took over to HUC in a Jar. (carryied same to ST JAMES HOSPITAL). Director Mahone ordered I be transported for the needed medical concerns in treatment of my injuries to outside hospital of St James medical center, pontiac. Where I was treated to my injuries that in tailed receiving (14) Metal Staples and (4) regular suture stitches being incerted to my scalp, head, to close the gash's and chunk size hole in my head. Of which the missing piece taken over in a Jar could not be reattached to my scalp, as it was and could not be cared for properly before hand to get timely reattached. However in all honesty from offenders life experiences the St James Doctor, who treated my injuries should be commended for the out standing nice job he was able to do in repairing the severe nature of my head injuries. Specifically closing the deep chunk size hole in my head from its missing piece of scalp. Where within less then 48 hours there was no real blood, botting-leaking nor amazingly much pain. Unfortunately, less then (8) days from sustaining injuries however, on Oct 14th 2008 received HCU call pass to be seen at "urgent care" for "suture removal" (Of the St James, good work) Where on that date, without having been pre-evaluated by any "Doctor" to a asscertaining if the injuries, suture, were even "Medically sound" within its healing process to be able, even ready for safe removal. Seeing that it was such a short time frame in healing process for the nature of the seriousness of the injuries sustained needing a total of (18) sutures to repair. Where HCU's staff nurse, name of Joyce, proceeded to hopelessly butcher up my head, scalp, its injuries and sutures incerted. Without any concern, common nor medically sound sense not medically pre-pairing the injured area. To first wash, moisten up, clean away large areas of dried blood and scabbing. Some of which covered over some of the sutures themself. Neverless, nurse Joyce had proceeded with incompetence to the removal of the sutures by just outright picking and pulling away at those stitches still undercoverd blood and scabbing of what she could hardly see to do in the first place to start with. Then she proceeded to just scrape and dry rub the wounds raw to try and remove the dried bllod and scabbing to no end. Like she was trying to plane, sandpaper smooth a rough piece of old wood. Where at (3) different moments I had to not only ask her to let-up, stop for a second, but pulled away from the amount of pain and damage she was causing to me, my head and already sustained injuries. Finally nurse Joyce herself was unable to even finish removing all (18) stitche With 3-4 left yet to be removed she gave up. Finally called for DR. Ngu, to come and finish up the sutures removal. Dr. Ngu, who was not much more effective or competent in preforming the remaining sutures removal. And he took just as much less care in doing so as nurse Joyce had. Where ultimately once Dr. Ngu, had all the stitches removed and thefine work of medical care I had received from St James hospital, had been damaged, lost and butchered up by nurse Joyce and Dr. Ngu.

see page 3

The botch job in the medically unsound manner and time frame of lack of its healing process that these HCU staff did to my head, injuries is clear to see on top of my head at present still. And from the (5) new stitches that DR. Ngu, had to suture back into my head to "Try" and repair the damage over all that was caused to my head, injuries by HCU's staff on Oct 14th 2008. Where still (20) days after the fact, my head its injuries in area of (5) new stitches still in place, is still red raw, tender, swollen painful to the touch feeling throughout the day as if it could rip open the wound at times.

On Oct 24th--08 I attended another call pass for suture removal of the (5) new stitches that were incerted on 10/14/08   Where nurse practitioner, Scott Baker, after viewing my injuries was heard to comment, the wound opened up when "They" tried removing the first set of stitches.

Director Mahone, was next heard to comment after view of injuries and in such reference to Mr Baker's comment, "Ya, I dont know why they did that"

On Oct 30th--08, Received call pass HCU for "Evaluation" --sutures removal. Where I was to be seen, about to be seen by same nurse Joyce and Dr. Ngu. However, before anything proceeded, infront of both, I had told them that I think its best cause of what happen on the 14th of oct. Having to have (5) new stitches incerted etc and that I had been legally advised as well that its mostlikely best for all concerned that I not be seen, evaluated or treated by them. Specifically on this remaining matter directly of further suture's removal. Or any after care to same. And that all I was asking for at that time was to be seen by someother HCU staff. And or for point of clarification from them or Director Mahone, if I could be seen by other staff or was I required or forced to be seen, treated by them directly and only nurse Joyce and Dr. Ngu. At that point nurse Joyce hostilely goes off into a rant of words expressed to me that of not being anything special nor needing to be seen by anyone else nor outside doctor.  Then Dr. Ngu, just as hostilely goes off into his own rant saying that he has been doing this for ten years further that he doesnt have to even see me and in fact wont see or treat me.

It should be noted that both nurse and doctor were forwarned by HCU c.o. staff as I had informed such c.o.'s that I would advise request to be treated by other HCU staff.  So both had time to work up presenting hostilely there words to expess to me in a manner of expressed intimidation. To have me back down on my request, as advised to be seen by someother HCU staff.    With nurse Joyce seeing that I wont withdraw my request, calls Director Mahone to inform Mahone of my request its reasons thereof etc.  Dir Mahone allegedly told nurse Joyce to have me sign a medical treatment refusal form.  At that point im trying to get my point accross that im not refusing treatment or refusing anything. But at that direct moment im requesting, asking to get clairified if I can be seen by someone else other then the both of them.  For this present evaluation to if or not the (5) new stitches are even ready to come out. And if so to have them removed by another staff. Nurse Joyce call's Dr Mahone again where she only informs Mahone, which nurse Joyce falsely alleged, that I refused to sign treatment refusal slip.

The nurse then tells c.o. staff, take me away im done they are not going to do anything with or for me. Have me sent  back to cellhouse.   While awaiting that I stop a (CMT) named marry-beth, asking her help and of whats going on that im being falsely denied medical care and that I would like to talk with Dr Mahone, a LT, Sgt a counseler, even a crissis team member.  She walks off saying something to the fact what do you want me to do. Im left with not knowing if she will advise anyone to my request to speak with them. However not long a doctor, name not known his I.D. tag wasnt facing me but 5 foot 7 balding and glasses who was either a psychologist or psychiatrist. comes over to speak at me in a manner just as the nurse and Dr. Ngu did hostilely were this doctor goes on to now threaten me with giving me a ticket for false information if my problem is not a crissis concern. But only a medical concern. At this point, my never before delt with a crissis team member but from the circumstances im under I cant dont see where the line of difference is. So I try and state my concern to him of which he seems to be already well aware of so I dont get out but a few words, he stops me and say's

sounds like a health problem not a crissis concern for me. And I should just
cite a letter here or there to whom it may concern. And he starts to walk off,
aking but a few steps and turns back to state to me that if it gets infected, its
our own problem to deal with. Cause I as he falsely states, had refused treatment.
   Letting the real thought and concern of an infection set in my mind. I make the
hoice at that time still at HCU. To go ahead and let my injuries, and sutures being
emoved to be done by Dr Ngu or nurse.  So I inform HCU c.o. staff (Alto) (spelling?
of this my choice and ask for him to inform nurse and Dr Ngu of it. As he willingly
oes. But he comes back moments later to tell me that (they) are not going to see
r treat you period!
   On the walk back to the cellhouse, I see Assit Warden Hardy and ask to talk with
im about the present medical concerns showing him my head and the stitches sticking
p out of it.  After I had tried to explain the concerns and reasons for asking to
e seen by other HCU staff and that in no way have i nor did I refuse any treatment
here all the response that was forth coming from Warden Hardy was you refused.
nd Hardy kept walking and trying to walk away.  When I pointed to the top of my
ead with the stitches sticking out of it, asking warden hardy what I was to do
bout it he just rolled his eyes shrugged his head in a sign of I dont know or care
ts your problem.  In my point of view and even have heard it stated by some staff
ow that they all know pontiac will close, its a I dont care attitude expressed by
ore then a few staff.
   Although this offender never has nor did he specifically do so in this present
atter, refuse in any respect to treatment of his present injuries.  Even though
n offender has a basic human right to refuse treatment, including medical and
urgical procedures, he is responsible for his health and well being.  As my own
edical file for the past 16 years clearly shows that to be a fact that I take need
nd care in seeking any and all medical treatment as needed / requested.
   Moreover its the health care units responsibility to provide and offender to
eceive adequate medical services.  And this basic human right should include in
espect to what an offender or any person, justly deems proper, sound or legally
dvised to cooperate with, submit to or advised not to submit to from certain staff
ho this offender more then reasonably believes, as the facts shall support that
uch certain medical staff has prior caused him to endure additional personal pain
nd suffering of irreparable harm in causing added further injury on top of the
injuries offender already endured. Which had required medical treatment to start
ith.
   Where its through the HCU's --offender bill of rights which affirms as departmen
policy, to assure all offender patients are treated in a manner that recognized
their basic human rights. This policy is also directed as establishing an area, in
atmosphere of trust between the offender and health care provider.  Although this
offender maintained a more then meaningful cooperative manner overall with a great
respectful attitude. However he was among other matters denied an atmosphere of
trust afforded tooffender within the HCU and its health care provider's.
   Offender was denied treatment with dignity and respect.
   Denied continuity of medical care within applicable laws and policies.
   Denied informed consent and to be involved in the decisions regarding his medica
   care. That was to be provided and by what apprapriate manner of health care staf
      services / treatment should have been so provided.
   Denied effective communication and access to information regarding diagnosis,
   treatment and expected outcome.
   Denied opportunity to participate in decisions about the intensity and scope of
   treatment to be provided. Within the limits of facility's philosophy, mission
   and applicable laws / regulations/
   Although this offender made no verbal statement nor implied or signed consent
to refusal of treatment. However he was and is denied treatment. being denied to
be informed of the medical and any other consequences of such actions of not
receiving any further treatment to that point and or by with staff whom he was or
wasn't to be afforded such treatment given or required to be given.
As such this offender will and can not walk around with the (5) remaining stitches

Still left in and sticking up out of the top of his head, withou them being removed, ASAP.  Showing tobe medically sound to do so. Nor should this offender be forced to unjustly endure any such further medical consequences that may stem therefrom if stitches removal is left untreated.

That this offender has reason to believe he is being denied further needed treatment on false grounds and or being forced to submit to needed treatment by and only by the two named herein HCU staff that offender distrusts and believes has caused him to endure additional pain, sufferring, irreparable damage in injury on top of these injuries he had already endured requiring treatment.

treatment being denied  over the well being of this offender in a means for the those concerned to the HCU (being forced to be seen by same nurse and Doctor) and c.o. staff / ILDOC system to protect their own legal interests of potential legal liabilities to this matter as a whole. As to the manner of how the offenders wounds had been treated and how such injuries were allowed to occur upon this offenders person to start with. Which could have been rightfully and there under ILDOC's authority, moreover preventable from ever happening to this offender at all.

Where at present, but should not be limited thereto nor in any further remedies of relief sought, thats related, the requested relief, more defined, where its relief requested for my head injuries, with stitches still in place at present now (20) days.  To ASAP, be competently medically evaluated by medical staff other then the above stated, Dr Ngu or nurse Joyce.

Evaluated to asscertain status of healing / signs of infection ? determined if medically sound for stitches removal. and if so determined,its requested that the stitches be removed ASAP.

If this medical evaluation / stitches removal process can not be afforded this offender by any HCU staff other then the above staff noted, Then offender still requests the evaluation / stitches removal to proceed. But submits to it being done by the above noted staff only under stated protest and as to reasons / causes stated of herein grievance filed of record. And that of any amended thereto come.


Respectfully submitted

William Carini I.D. # N51235


(5)

(10 of 10)



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277 / Springfield IL 62794-9277 / Telephone: (217) 558-2200 / TDD: (800) 526-0844

November 7, 2008

Mr. William Carini
Reg. No. N51235
Pontiac Correctional Center
P.O. Box 99
Pontiac, IL  61764

Dear Mr. Carini:

Your letter of complaint about your medical care was forwarded to my office.

I had the Health Services staff look into your situation and they directed the Health Care Unit at Pontiac to ensure that your stitches were removed.  It was my understanding that they were removed today by Dr. Mahone.

It appears that your issue has been resolved.  Should you develop any other health related problems, please submit a request to go to Health Services.

Sincerely,

Roberta M. Fews, Deputy Director
Program and Support Services

cc:    Acting Warden Mathy

exhibit group
page (11)

To Whom it may concern:                    10/9/08

My name: Edward Buie, # B85145, cell
714. On Monday Oct. 6th. I heard inmate
Womach, cell 717, pleading with 5 gal.
Officer Lindsy to get him out of the
cell before 3:00 P.M. or it was going
down. Meaning he was going to fight
Inmate Carini, Cell 717. Officer Lindsy
said he couldn't do anything. This was
between 1:00 pm and 2:00 pm that day. I
Know that inmate Womach had been
trying to get out of that cell for
several days prior to Oct. 6th. He told
the gal. Officers and the Lt.

I have wittnessed other inmates get
moved on the day they asked. I have
wittnessed other inmates be moved 2 to 3
times in less than two months. The
Officers failed to Protect both inmates and
the Institution.

I write this because the incident was
100% preventable.

                         Edward Buie  B85145
                         Edward Buie



**Illinois**
Department of
**Corrections**

*Ex. 1*

**Pat Quinn**
Governor

**Michael P. Randle**
Director

Pontiac Correctional Center/700 W. Lincoln Street/P.O. Box 99/Pontiac, IL 61764/Telephone:(815)842-2816/TDD: (800)526-0844

## M E M O R A N D U M

DATE: *9/15/10*

TO: *William Carini, N51235*

FROM:   Trust Fund

SUBJECT:   Trust Fund Request

We are in receipt of your request for a transaction statement. It is the policy of the Pontiac Correctional Center that a 90 day transaction statement will be provided upon request once every 30 days.

If you need a six month transaction statement to send to the federal court, your request must be accompanied by underline either A or B noted below. If you need a six month transaction statement to send to the circuit court, your request must be accompanied by C.

- A.)   A court order requiring you to provide the transaction statement.
- B.)   The Forma Pauperis Certificate attached to your completed complaint. Your submitted documents will be returned to you with the requested transaction statement and completed Forma Pauperis Certification.
- C.)   Your completed complaint, which will be returned to you with the requested transaction statement.

If you have any questions, please contact your correctional counselor.

NOTE:  LAST STATEMENT DATE: _____

cc:   file; chron

Ex. 2

**FILED**
COURT OF CLAIMS

OCT 0 1 2009

Secretary of State and
Ex-Officio Clerk Court of Claims

IN THE

Court of Claims

of the state of Illinois

William Carini
                    Claimant

            Vs.
State of Illinois and the
IL Department of Corrections
                    /Respondent's

No. _____

## PROOF/CERTIFICATE OF SERVICE

TO: Deputy Clerk
Court of Claims of Illinois
630 South Calene street
Springfield Illinois 62756

TO: Illinois Attorney General
Court of Claims Division
100 W. Randolph St. Suite 10-400
Chicago Illinois 60601

PLEASE TAKE NOTICE that on Sept 29th , 200 9 , I placed
the documents listed below in the institutional mail at the Pontiac
Correctional Center, properly addressed to the parties listed above for mailing through
the United States Postal Service   A notice of Intent of

Claim for personal Injury

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/1-109 I declare, under penalty of
perjury that I am a named party in the above action, that I have read the above
documents, and that the information contained therein is true and correct to the best of
my knowledge and belief.

DATED: Sept 29, 2009

/s/ William Carini
Name: William Carini
IDOC No. N51235
        Pontiac Correctional Ctr.
POB 99 Pontiac IL 61764
                                    , IL

Ex. 3

 **Illinois Court of Claims**
Office of the Secretary of State
630 S. College St., Springfield, IL 62756

**FILED**
COURT OF CLAIMS

OCT 0 1 2009

 Secretary of State and
Ex-Officio Clerk Court of Claims

Notice of Intent of Claim for Personal Injury

# IN THE COURT OF CLAIMS, STATE OF ILLINOIS

To:     Attorney General Lisa Madigan
        100 W. Randolph St.
        Chicago, IL 60602

        Illinois Court of Claims
        Secretary of State Jesse White
        Ex Officio Clerk of the Court
        630 S. College St.
        Springfield, IL 62756

The undersigned hereby serves Notice of Claim for personal injuries upon the State of Illinois pursuant to the Illinois Revised Statutes, Chapter 37, Section 439.22-1.

_William Carini , Claimant_
Name of Person to whom Injuries Occurred

_William Carini , Claimant_
Name of Person Injured

_Il Dept Corr, Pontiac Corr Ctr pcb 99  Pontiac IL 61764_
Residence of Person Injured

_Pontiac Corr Ctr South protective Custody cellhase 7 gallery Cell 717_
_Resondents failure to provide_ Place of Accident _Claimant Safety from Cellmates assault._
_Head injuries Sistained with lack of proper medical care provided there_
Statement of Accident

_October 16th 2008          3:00pm - 3:30pm_
Date and Hour of Accident

_Pontiac Corr Ctr Health Care unt staff / osf st James Medical Ctr Staff_
Name and Address of Attending Physician

_osf st James Medical Ctr 2500 W. Reynolds Pontiac IL / Pontiac Corr Ctr_
Name and Address of Treating Hospital                                 _Health Care unit_

Signed: _William Carini  N57235_
                          Claimant's Signature

_Pontiac CC 700 W. Lincln St Box 99_
                    Street Address

_Pontiac_                    _IL_
City                        State

_61764_                    _N/A_
ZIP                        Telephone Number

Printed by authority of the State of Illinois - March 2005 - 500 - CC-86

*EX, 4*

Sept 19th-10.

To. Chief Administrative Officer Pontiac cc, Warden Guy Pierce.

From. William Carini # N-51235 SPC--821, currently.

Re: Emergency Grievance Process Requested.

    To, Warden Pierce or designee.

    Please find inclosed my dated grievance of 9/19/10. Grievance concerns
which are requested emergency processing / response. With requested relief
afforded same.    Nature of grievance concerns: Offender denied proper request
for a trust fund balance certificate, and six month ledger print copy.
    Documents, certificate + ledger, as are required by noted rules of the courts.
For legal pleadings being submitted by inmates for filing In forma pauperis,
first stage consideration with the courts.
    Imminent personal injury and serious irreparable harm exists.
Where request of trust fund is improperly denied, inturn inmate is denied his
access, timely access to the courts. Being able to file his legal pleadings
before the courts. Which could be legal cause to bar pleadings being filed.
With risk of irreparable harm being caused to enable furthering inmates just
claims and to seek relief of same before the courts.


    Your timely response, with affording the relief(s) requested, of the
certificate and ledger, is hopefully expected, be much appreciated.


    Respectfully submitted,

William Carini
# N-51235


cc/EWC
   IL Court of Claims
   Federal District Court

EX. 5



**Illinois**
Department of
**Corrections**

**Pat Quinn**
Governor

**Gladyse Taylor**
Acting Director

DOC Legal Services / Pontiac Correctional Center / 700 West Lincoln Street, P.O. Box 99 / Pontiac , IL 61764 / Telephone: (815) 842-0947
Fax: (815) 842-0946
TDD: (800) 526-0844

**DATE:**       September 20, 2010

**TO:**          William Carini N-51235  SP-821

**FROM:**      Michelle Clark, DOC Legal Services

**RE:**          Request for 6-Month Trust Fund Transaction Statements

**The attached Notice of Intent of Claim for Personal Injury that you wish to file with the Illinois Court of Claims does not need to be accompanied by a filing fee or by any showing of inability to pay said filing fee.  You therefore have no need of a six-month transaction statement at this time.**

If you are unable to pay the filing fee when you are ready to file your Court of Claims complaint about the personal injury described in the attached Notice of Intent, you must submit the completed complaint with the certificate to be completed by the Trust Fund Officer in order to receive the required six-month transaction statement.

The Business Office enacted the requirement of providing a copy of a completed complaint in 2002 due to an overwhelming number of requests for transaction statements from offenders falsely claiming they were filing legal documents.  The Courts have been previously informed of this policy and have taken no judicial notice of it.

Attachment

cc:     Trust Office
        Chron
        Master File

RECEIVED

ex. 6

7/18/02

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

MAR 1 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN FORMA PAUPERIS APPLICATION
AND
FINANCIAL AFFIDAVIT

WILLIAM  CARINI I.D. # N51235
~~XXXXXXX~~

PETITIONER

v.

WARDEN, STEPHEN MOTE
PONTIAC  CORR CTR  ILDOC

~~XXXXXXXXXX~~
RESPONDENT

CASE NUMBER       03 C 9416

JUDGE  SUZANNE B. CONLON

*Wherever □ is included, please place an X into whichever box applies. Wherever the answer to any question requires more information than the space that is provided, attach one or more pages that refer to each such question number and provide the additional information. Please PRINT:*

I, __WILLIAM  CARINI_____, declare that I am the □plaintiff ☒petitioner □movant (other_____) in the above-entitled case. This affidavit constitutes my application □ to proceed without full prepayment of fees, or □ in support of my motion for appointment of counsel, or ☒ both. I also declare that I am unable to pay the costs of these proceedings, and that I am entitled to the relief sought in the complaint/petition/motion/appeal. In support of this petition/application/motion/appeal, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?       ☒Yes       □No    (If "No," go to Question 2)
   I.D. # __N51235_____ Name of prison or jail: __PONTIAC   CORR CTR__
   Do you receive any payment from the institution? ☒Yes □No   Monthly amount: __10.00__

2. Are you currently employed?       □Yes       ☒No
   Monthly salary or wages:_____
   Name and address of employer: _____

   a.   If the answer is "No":
        Date of last employment:  __9/5/00__
        Monthly salary or wages: __45.00__
        Name and address of last employer: __IL RIVER CORR CTR__

   b.   Are you married?       □Yes       ☒No
        Spouse's monthly salary or wages:_____
        Name and address of employer:_____

3. Apart from your income stated above in response to Question 2, in the past twelve months have you or anyone else living at the same address received more than $200 from any of the following sources? *Mark an X in either "Yes" or "No", and then check all boxes that apply in each category.*

   a.   Salary or wages                                □Yes       ☒No
   Amount_____ Received by_____

b.  ☐ Business, ☐ profession or ☐ other self-employment      ☐ Yes      ☑ No
Amount_____ Received by_____

c.  ☐ Rent payments, ☐ interest or ☐ dividends      ☐ Yes      ☑ No
Amount_____ Received by_____

d.  ☐ Pensions, ☐ social security, ☐ annuities, ☐ life insurance, ☐ disability, ☐ workers'
compensation, ☐ unemployment, ☐ welfare, ☐ alimony or maintenance or ☐ child support
                                                                    ☐ Yes      ☑ No
Amount_____ Received by_____

e.  ☐ Gifts or ☐ inheritances                          ☐ Yes      ☑ No
Amount_____ Received by_____

f.  ☒ Any other sources (state source: GIFTS/FAMILY      )  ☒ Yes      ☐ No
Amount  50.00           Received by  william carini
for health care needs and minimal legal copy costs

4.  Do you or anyone else living at the same address have more than $200 in cash or checking or
savings accounts?      ☐ Yes   ☑ No      Total amount:_____
In whose name held:_____ Relationship to you:_____

5.  Do you or anyone else living at the same address own any stocks, bonds, securities or other
financial instruments?                              ☐ Yes      ☑ No
Property:_____ Current Value:_____
In whose name held:_____ Relationship to you:_____

6.  Do you or anyone else living at the same address own any real estate (houses, apartments,
condominiums, cooperatives, two-flats, three-flats, etc.)?      ☐ Yes      ☑ No
Address of property:_____
Type of property:_____ Current value:_____
In whose name held:_____ Relationship to you:_____
Amount of monthly mortgage or loan payments:_____
Name of person making payments:_____

7.  Do you or anyone else living at the same address own any automobiles, boats, trailers, mobile
homes or other items of personal property with a current market value of more than $1000?
                                                      ☐ Yes      ☑ No
Property:_____
Current value:_____
In whose name held:_____ Relationship to you:_____

8.  List the persons who are dependent on you for support, state your relationship to each person and
indicate how much you contribute monthly to their support. If none, check here ☑ No dependents

-2-

EX. 7

I declare under penalty of perjury that the above information is true and correct. I understand that pursuant to 28 U.S.C. § 1915(e)(2)(A), the court shall dismiss this case at any time if the court determines that my allegation of poverty is untrue.

Date: 12-12-03

_Signature of Applicant_

William Carini
(Print Name)   I.O. # N51235

----------------------------------------------------------------------

**NOTICE TO PRISONERS:** A prisoner must also attach a statement certified by the appropriate institutional officer or officers showing all receipts, expenditures and balances during the last six months in the prisoner's prison or jail trust fund accounts. Because the law requires information as to such accounts covering a full six months before you have filed your lawsuit, you must attach a sheet covering transactions in your own account--prepared by each institution where you have been in custody during that six-month period--and you must also have the Certificate below completed by an authorized officer at each institution.


## CERTIFICATE
### (Incarcerated applicants only)
### (To be completed by the institution of incarceration)

I certify that the applicant named herein, William Carini , I.D.# N51235 , has the sum of $ 33.34 on account to his/her credit at (name of institution) Pontiac Correctional Center I further certify that the applicant has the following securities to his/her credit:_____. I further certify that during the past six months the applicant's average monthly deposit was $ 10 .

(Add all deposits from all sources and then divide by number of months).

12/12/03
DATE

SIGNATURE OF AUTHORIZED OFFICER

Jennifer Carlson
(Print name)

ex, 8

IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED

MAR 1 8 2004

| | | |
|---|---|---|
| U.S.A. ex rel | ) | No. 03 C 9416  MICHAEL W. DOBBINS |
|    William Carini | ) | CLERK, U.S. DISTRICT COURT |
|        Petitioner | ) | |
|     vs. | ) | Honorable |
| Stephen Mote, warden | ) | Suzanne B. Conlon |
| pontiac corr ctr | ) | Judge presiding |
|       Respondent | ) | |

## MOTION FOR LEAVE TO PROCEED ON APPEAL INFORMA PAUPERIS

Now  comes petitioner, pro se William Carini and pursuant to 28 U.S.C. sec. 1915 and respectfully moves this court for leave to proceed on appeal informa pauperis. From the district courts judgement entered on 3/2/04 denial thereof petitioner's petition for writ of habeas corpus relief, from state court conviction.

    In support thereof:

1) petitioner was prior granted leave of this court to file his petition for writ of habeas corpus relief informa pauperis on 1/2/04

2) That above said prior application of financial affidavit to proceed informa pauperis  a copy of which is attached here to this motion present and made part thereof this motion by reference herein wherefore petitioner's financial status is unchanged as a indigent person.

3) That petitioner has meritous federal constitutional issues and claims to further for review on appeal in this action.

   Wherefore petitioner prays this court grant him leave to appeal informa pauperis and further for this court to order the appointment of counsel to repersent petitioner on appeal.

Date 3-15-04

Respectfully Submitted

/S/ William Carini

William Carini  I.D. # N51235
pontiac corr ctr po box 99
pontiac  Il 61764

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

WILLIAM CARINI,              )

   PLAINTIFF             )

                      )

     VS.              )       NO.--10-1300--------------

                      )

IDOC, CORRECTIONAL AND MEDICAL   )

STAFF, PRESENTLY AND FORMERLY OF  )

PONTIAC CORR CTR, INDIVIDUALL AND )

IN THIER OFFICAL CAPACITIES,    )

(FORMER) ACTING WARDEN JOESPH MATHY,)

(FORMER) ASSIST, WARDEN M. HARDY  )

MAJOR (L.T. FORMERLY) KEVIN DELONG )

CORR"S OFFICER, HALEY          )

CORR'S OFFICER, DAVID LINDSAY    )

(FORMER) MEDICAL STAFF, DR NGU    )

MEDICAL STAFF, NURSE JOYCE      )

   DEFENDANT'S            )

                      )

NOTICE / PROOF OF SERVICE OF SCANNED PDF / E-FILING OF

COMPLAINT DOCUMENTS

To. Clerk of United States Central
    District Court of Illinois, Peoria Div
    305 Federal Building 100 N.E. Monore
    Peoria IL 61602.

To. Michelle Clark, Legal Services of
    Pontiac Corr Ctr Box 99 Pontiac
    IL 61764, Notice of Defendant's

(1)

Please take notice that on—— *9-29-10* ——. At the Pontiac corr ctr
Law Library, Pursuant to the Court's pilot project and general Orders.
I Have caused to be scanned PDF / E-Filed, My Complaint documents.
Pursuant to 42 U.S.C. Sec 1983, to the Clerk of the United states Centrl
District Court.

   And named party above for legal services of the Pontiac Corr ctr and
for notice otherwise of this E-Filing at this time to defendant's.


   Pursuant to 28 U.S.C. 1746 and or 735ILCS5/1-109.
Where under penalty provided by law, I declare I am the named plaintiff
in the above action. Have read the complaint documents presntly E-filed
and that the information contained therein is true and correct to the best
of my knowledge and belief.


Date, *Sept 29th 2010*

/s/ *William Carini*
   William Carini, Plaintiff Pro se
   I.D. # N-51235
   Pontiac Corr ctr Po Box 99
   Pontiac IL 61764.

(2)